COMMONWEALTH of Pennsylvania, Appellant, (At 732)

v.

Christopher BLACK, Appellee.

Commonwealth of Pennsylvania, Appellant, (At 733)

v.

Vincent Diorio, Appellee.

Superior Court of Pennsylvania.

Argued March 29, 2000.
Filed Aug. 25, 2000.

Michael Erlich, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Joseph C. Santaguida, Philadelphia, for Black, appellee.

Robert Gamburg, Philadelphia, for Diorio, appellee.

Before: FORD ELLIOTT, MONTEMURO*, JJ. and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 The Commonwealth of Pennsylvania appeals from an order granting a suppression motion entered in the Court of Common Pleas of Philadelphia County.[1] We reverse.

¶ 2 Appellees, Christopher Black and Vincent Diorio[2], were charged with know-

---

* Retired Justice assigned to Superior Court.

1. The Commonwealth has complied with Pennsylvania Rule of Appellate Procedure 311(d):

> In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa. R.A.P. 311(d). *See Commonwealth v. Dugger*, 506 Pa. 537, 539, 486 A.2d 382, 383 (1985) (holding an order suppressing evidence is appealable only when it is apparent *from the record* that the order terminates or substantially handicaps the prosecution).

2. Pursuant to Pennsylvania Rule of Appellate Procedure 513, these appeals have been consolidated. Rule 513 states in pertinent part:

> [w]here there is more than one appeal from the same order, or where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal.

ing and intentional possession of a controlled substance and possession with the intent to deliver a controlled substance. Black and Diorio each filed a pre-trial motion to suppress the physical evidence, which was granted on January 22, 1999. The Commonwealth appeals, claiming the trial court erred when it granted Black and Diorio's motions to suppress.

¶ 3 On September 23, 1997, Philadelphia Police Officer William Jeitner of the Narcotics Field Unit had a telephone conversation with Detective Payton of the Los Angeles County Police Department regarding a Federal Express package addressed to Barbara Barsh at 12516 Torrey Road, First Floor, Philadelphia, Pennsylvania, 19154. Detective Payton informed Officer Jeitner that he had received information from a reliable informant that the Federal Express package, addressed to Barbara Barsh, contained cocaine. Detective Payton also informed Officer Jeitner that the informant had provided prior information which led to several arrests in the past. Moreover, Detective Payton informed Officer Jeitner that the Federal Express package had been intercepted in California, opened without a properly issued search warrant, and was found to contain numerous hand lotion containers with bags of cocaine stuffed inside of the containers. The package was resealed and sent to Bob Brown of the Federal Express Security office in Bristol, Pennsylvania.

¶ 4 Officer Jeitner and Officer Donna Doran met with Bob Brown in Bristol, Pennsylvania. Officers Jeitner and Doran took possession of the Federal Express package. Officer Richard Nicoletti of the Philadelphia Police Narcotics Field Unit obtained search warrants for the package and the first floor apartment. A search of the package was conducted at the Narcotics Field Unit, which revealed that the package contained eight bottles of Suave hand lotion. Four of the bottles were wrapped in gauze and surgical tape and contained a white substance. The sub-

stance tested positive for methamphetamines. The whereabouts and existence of Barbara Barsh could not be obtained.

¶ 5 Officer Jeitner arranged for Officer Doran to deliver the Federal Express package to the first floor apartment. Officer Doran left the package between the screen door and the front door of the apartment after she knocked on the door and did not receive an answer. Officer Nicoletti maintained surveillance of the property during this time. Officer Nicoletti did not see anyone enter or exit the apartment until forty-five minutes later, when he observed Diorio enter the apartment and take the parcel inside. Approximately thirty minutes later, Officer Jeitner knocked on the front door of the apartment and announced that police officers were present on the property and that he had a search warrant for the apartment. Again, Officer Jeitner made several knocks and announcements, and when he did not hear any response from the occupants inside, he forcibly entered the premises to execute the search warrant.

■ ¶ 6 Upon entering the apartment, the Officers saw Black and Diorio seated on a couch in the living room with a large glass table in front of them. Several bags of cocaine were seized from the glass tabletop. The Federal Express package was leaning against a wall between the door and the rear of the couch. The search also resulted in the seizure of drugs, money, drug paraphernalia, and items indicating Black's possessionary interest in the property. Black and Diorio were charged with knowingly or intentionally possessing a controlled substance, possessing a controlled substance with an intent the intent to deliver it, possessing drug paraphernalia, and criminal conspiracy. Black and Diorio filed motions to suppress which were granted by the trial court. This appeal followed. The Commonwealth raises the following issue for our consideration:

---

Appeals may be consolidated by stipulation of the parties to the several appeals.

Pa.R.A.P. 513.

Did the lower court err in granting defendant's suppression motion based on speculation that a package of contraband addressed to a third party may have been improperly opened in California where defendant, apart from having no standing to raise the issue, clearly lacked any reasonable expectation of privacy in the package at the time of the search?

Our standard of review in this case is well settled.

In reviewing an order granting a motion to suppress, an appellate court may consider only the evidence of the defendant's witnesses and so much of the Commonwealth's evidence that, read in the context of the record as a whole, remains uncontradicted. Furthermore, our scope of appellate review is limited primarily to questions of law. We are bound by the suppression court's findings of fact if those findings are supported by the record. Factual findings wholly lacking in evidence, however, may be rejected. *Commonwealth v. Torres*, 429 Pa.Super. 228, 632 A.2d 319, 320 (1993).

*Commonwealth v. Blee*, 695 A.2d 802 (Pa.Super.1997).

¶ 7 The Commonwealth introduced and admitted into evidence the two search warrants in question along with their respective affidavits of probable cause. The Commonwealth asserts that Black and Diorio lack standing to challenge the validity of the search warrants and that the search warrant issued for the Federal Express package was lawful. In its opinion, the trial court held Black and Diorio:

[h]ave automatic standing to challenge the legality of the search warrants and the admissibility of any evidence derived therefrom. *Commonwealth v. Knowles*, 459 Pa. 70, 327 A.2d 19 (1974); *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1979)[1983]. If possession of the seized evidence is itself an essential element of the offense [when] the defendant is charged, the government is precluded from denying that the Defendant has the requisite possessory interest to challenge the admission of the evidence (at the suppression hearing). *Knowles, supra* at 76[, 327 A.2d 19].

■ ¶ 8 In addition to standing, however, we find that a defendant must also demonstrate a reasonable expectation of privacy in the property searched. Following *Knowles, supra*, this court held in *Commonwealth v. Rodriquez*, 385 Pa.Super. 1, 559 A.2d 947 (1989), that a person must demonstrate a reasonable expectation of privacy to establish standing. In *Rodriquez*, this court stated:

In *Sell*, our Supreme Court interpreted Article I, section 8 of the Pennsylvania Constitution as giving a broader scope of protection with regard to standing to challenge a search and seizure than the United States Supreme Court has construed in the fourth amendment. N1 The *Sell* Court elected to continue the "automatic standing" rule it first adopted in *Commonwealth v. Knowles*, 459 Pa. 70, 327 A.2d 19 (1974). Here, appellee was charged with one count each of knowing or intentionally possessing a controlled substance, manufacture with intent to manufacture or deliver a controlled substance, and criminal conspiracy. Because the first two charges are possessory offenses, appellee initially has standing to challenge the search and seizure, however, as a matter of law, we find appellee abandoned the property seized, she has not standing to challenge the police search of the house and consequent seizure of the narcotics.

―――――

N1 *See e.g. Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) and *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968) (reevaluating the "automatic standing" rule applied to alleged Fourth Amendment violations in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), which held the mere charge of a defendant with a possessory offense conferred standing to assert an alleged Fourth Amendment violation).

*Rodriquez, supra* at 948.

Furthermore, the *Rodriquez* court held:

It is well-established that "no one has standing to complain of a search and seizure of property that he has voluntarily abandoned." *Commonwealth v. Shoatz*, 469 Pa. 545, 553, 366 A.2d 1216, 1220 (1976); *Commonwealth v. Cihylik*, 337 Pa.Super. 221, 226–28, 486 A.2d 987, 990 (1985). "The test for abandonment is whether the complaining party could retain a reasonable expectation of privacy in the property allegedly abandoned." *Commonwealth v. Sero*, 478 Pa. 440, 452, 387 A.2d 63, 69 (1978); *Cihylik, supra,* 337 Pa.Superior Ct. at 226–28, 486 A.2d at 990. These principles were well-stated by the Supreme Court in *Sell*: "[P]ersonal possessions remain constitutionally protected ... until their owner meaningfully abdicates his control, ownership or possessory interest therein." *Id.*, 504 Pa. at 67, 470 A.2d at 469. *Rodriquez, supra* at 949.

¶ 9 The Pennsylvania Supreme Court addressed the issue of placing the burden upon the defendant seeking suppression to establish a legitimate expectation of privacy as an essential element of his case in *Commonwealth v. Hawkins*, 553 Pa. 76, 718 A.2d 265 (1998). The Pennsylvania Supreme Court has determined that standing requires a defendant to demonstrate one of the following elements:

(1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element of the prosecution's case, the element of possession at the time of the contested search and seizure; or (4) a proprietary or possessory interest in the searched premises.

*Commonwealth v. Hawkins*, 553 Pa. 76, 718 A.2d 265 (1998) (citing *Commonwealth v. Peterkin*, 511 Pa. 299, 309 513 A.2d 373, 378 (1986)).

In *Hawkins, supra,* the Pennsylvania Supreme Court opined:

While this Court has stated that automatic standing maintains continued vitality under Article 1, Section 8 of the Pennsylvania Constitution, *see Commonwealth v. Sell*, 504 Pa. 46, 66–68, 470 A.2d 457, 468–69 (1983); *see also Peterson*, 535 Pa. at 497, 636 A.2d at 617, these decisions have recognized that the essential effect is to entitle a defendant to an adjudication of the merits of a suppression motion. *See id.* at 497, 636 A.2d at 617. **In order to prevail on such a motion, however, a defendant is required to separately demonstrate a personal privacy interest in the area searched or effects seized, and that such interest was "actual, societally sanctioned as reasonable, and justifiable."** *Peterson*, 535 at 497, 636 A.2d at 617. **Such a legitimate expectation of privacy is absent where an owner or possessor meaningfully abdicates his control, ownership or possessory interest.** *Sell*, 504 at 67, 470 A.2d at 469.... [A] person must maintain the privacy of his possession in such a fashion that his expectations of freedom from intrusion are recognized as reasonable.

*Hawkins, supra* at 267 (emphasis added). The Pennsylvania Supreme Court further held that "[i]n order to obtain standing to challenge the legality of the search, [a defendant] must establish that **he, rather than [another]**, was the victim of an invasion of privacy." *Hawkins, supra* at 269 (emphasis added).

¶ 10 Most recently, the Pennsylvania Supreme Court addressed the issue of constitutionally protected privacy interests in *Commonwealth v. Johnson*, 556 Pa. 216, 234–35, 727 A.2d 1089, 1098 (1999), holding that:

An individual whose constitutionally protected rights are not violated cannot claim any injury by a warrantless police seizure. [FN7] In order to claim a constitutionally protected right in an item seized, the defendant must show: (1) that he had a subjective expectation of privacy; and (2) that the expectation is one that society is prepared to recognize as reasonable and legitimate. *See*

*Commonwealth v. Gordon,* 546 Pa. 65, 71, 683 A.2d 253, 256 (1996). We consider the totality of the circumstances and carefully weigh the societal interests involved when determining the legitimacy of such an expectation. *Id.* at 71, 683 A.2d at 257.

FN7. We have divided this principle into two concepts: (1) standing to litigate a suppression claim; and (2) the existence of a reasonable and legitimate expectation of privacy in the thing seized. *See Commonwealth v. Peterson,* 535 Pa. 492, 497, 636 A.2d 615 617 (1993).

*Johnson, supra* at 234–35, 727 A.2d at 1098.

■ ¶ 11 We agree with the trial court and find that Black and Diorio have standing to challenge the legality of the search warrants and the admissibility of any evidence derived therefrom. However, unlike the trial court, which granted standing to the appellees because of their possessory interest in the evidence seized, we find that the appellees must be accorded standing due to their presence on the premises at the time of the search and seizure. *Hawkins, supra.*

■ ¶ 12 Despite this finding, we are compelled to reverse the suppression court's order which failed to look beyond *Knowles* and apply the second prong of the *Johnson* test that requires the defendant to establish the existence of a reasonable and legitimate expectation of privacy in the item seized. *Johnson, supra* at 235, 727 A.2d at 1098. Neither Black nor Diorio established a privacy interest in the Federal Express package addressed to Barbara Barsh. Neither Black nor Diorio alleged that they were Barbara Barsh or that Barbara Barsh was an alias used by either of them. Furthermore, at the suppression hearing, both Black and Diorio attempted to disassociate themselves from the package. Black testified that he had no recollection of the package at all, while Diorio admitted that he was a short term visitor to the apartment where the package was sent, and actually "kicked" it aside on his way through the door. Because Black and Diorio attempted to disassociate themselves from the package, they each failed to demonstrate how their respective privacy interests had been violated under either the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution.

¶ 13 With regard to the appellees' Fourth Amendment prosecutions, the trial court held:

the parcel in question is first class mail and is free from inspection by (state and federal actors), except in the manner provided by the 4th Amendment. "Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by parties forwarding them in their own domiciles. The Constitutional guarantee of the right of the people to be secure and their papers against unreasonable searches and seizures extends to their papers, thus closed against inspection, where ever they may be. Whilst in the mail, they can only be opened and examined under like warrant, issued upon similar open affirmation, particularly describing the thing to be seized, as is required when papers are subject to search in one's own household. No law of [C]ongress can place in the hands of officials connected with the postal service any authority to invade the secrecy of letters and such sealed packages in the mail; and all regulations as to mail matters of this time must be in subordination to the great principle embodied in the 4[th] Amendment of the Constitution."

*Ex parte Jackson,* 96 U.S. 727, 733, 24 L.Ed. 877 (1878).

■ 14 We find that *Ex parte Jackson* is inapplicable in the present case. Appellees and the trial court all base the positions they advance on an assumption that the package addressed to Barbara Barsh was opened unlawfully by California authorities. Therefore, the argument continues, the information conveyed by California authorities to the Pennsylvania police

could not properly be used as probable cause to support a search warrant in Pennsylvania. *Commonwealth v. Sanchez*, 552 Pa. 570, 716 A.2d 1221 (1998), which holds that only foreign searches conducted lawfully under the precepts of the particular foreign jurisdiction may supply probable cause for a Pennsylvania warrant, is cited in support.

¶ 15 It is necessary to point out that in its remarks following the suppression hearing, the trial court considered it to be unclear whether the evidence on which the warrants were based had been obtained "legally or illegally." In its opinion, however, the court states unequivocally that the search was illegal based on *Ex parte Jackson*. No reference of any kind is made to California law.

¶ 16 Significantly, the trial court also neglects to mention that Fourth Amendment protections are personal, and inure to the protection of persons not things. *Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). As a predicate to demonstrating the violation of Fourth Amendment rights, that is, to establish standing, California law, like federal law, requires a defendant to show that he has a legitimate expectation of privacy in the invaded property or place. Witkin, B.E., 7 *Summary of California Law* § 410, 9th Ed. (1996). *See also People v. Badgett*, 10 Cal.4th 330, 41 Cal.Rptr.2d 635, 895 P.2d 877 (1995). A disclaimer of interest, such as Appellees here have made, or the absence of evidence of ownership, possession or control of the item searched will preclude a challenge to the legality of the search. *People v. Dees*, 221 Cal.App.3d 588, 270 Cal.Rptr. 554 (1990). Thus, in California, given their disavowal of all knowledge of package, contents or addressee, Appellees would not have been permitted to argue the legality of the search conducted there. Accordingly, the trial court erred in presuming the status of the California search.

¶ 17 In *Sanchez, supra*, which involved a dog sniff of a sealed package in California, the Pennsylvania Supreme Court declined to take a position on whether the appellant had a reasonable expectation of privacy in the package. Such a decision was never necessary as that search procedure required no probable cause or warrant under California law; the appellant's challenge to its validity thus would be *a priori* foreclosed there. Accordingly, the principle of law it enunciates is inapplicable here, but nonetheless instructive because of the parallel it presents. Moreover, the package in *Sanchez* was actually addressed to the appellant, so that whatever determination might be made of Sanchez' privacy interest in a package addressed to him, the foundational question of whether Appellees herein would have had standing to question the California search, given their complete lack of connection with the package at that point, must be answered in the negative.

¶ 18 Although Pennsylvania approaches the standing issue differently than does California, the result remains the same. As previously state, an automatic right is conferred on a defendant to adjudicate the merits of a suppression motion. "In order to prevail on such a motion, however, a defendant is required to separately demonstrate a personal privacy interest in the area searched or the effects seized, and that such interest is 'actual, societally sanctioned as reasonable and justifiable.'" *Hawkins, supra* at 81, 718 A.2d at 267 (quoting *Peterson, supra* at 497, 636 A.2d at 617). The rationale underlying the finding that Appellees had no privacy interest in the package in Pennsylvania serves equally to support the same conclusion regarding the package while it remained in California. In this case, the package was addressed to a person whose identity was never ascertained, and of whom both Appellees denied knowledge. Lacking such interest here, none could be demonstrated there. Thus the argument that the Pennsylvania search warrant was invalid because it was unsupported by legitimately obtained probable cause cannot be sustained.

¶ 19 In addition, we note that sealed packages deserve constitutional protection under appropriate circumstances, however, courts "entertain the presumption that the addressee is the true and sole owner until the opposite is shown." 5 W. LaFave, *Search and Seizure* § 11.3(f) at 205 3d ed.1996 (collecting cases). Here, Black and Diorio did not present evidence that they sent the package or were the person to whom it was addressed; therefore, Black and Diorio cannot assert a claim for invasion of privacy.

▇▇▇▇▇ ¶ 20 Moreover, it is well settled law that:

> "[I]n order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." See also *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980): *Rakas v. Illinois*, 439 U.S. 128 at 133–34, 99 S.Ct. 421 at 425, 58 L.Ed.2d 387.

*Hawkins, supra* at 268. By the same token, we find that a person does not have a privacy interest in mail that has not been either sent or received by that person. Because neither Black nor Diorio asserted an ownership interest in the package addressed to Barbara Barsh, and because neither can assert the rights of Barbara Barsh, we find that they did not have a privacy interest in the package. Therefore, Black and Diorio's motions to suppress should have been denied. *Blee, supra*.

¶ 21 Order reversed. Jurisdiction relinquished.

¶ 22 FORD ELLIOTT, J., files a Concurring Opinion.

**FORD ELLIOTT, J., concurring:**

¶ 1 I concur in the result reached by the majority. Although I agree that the trial court should be reversed, I arrive at this conclusion by traveling down a very different path of reasoning. I would find that appellees possess both standing and a reasonable expectation of privacy to pursue their claims.

¶ 2 I begin by reviewing the procedural posture of this case because it is pivotal to my analysis. Appellees filed motions to suppress evidence seized during a search of Black's apartment. The police conducted the search pursuant to an anticipatory search warrant,[3] which provided that the apartment could be searched only if a package searched pursuant to warrant no. 87969 contained cocaine or another controlled substance, and if, after being delivered to Black's address, the package was taken inside by the occupants. (R.R. at 6a.)

¶ 3 The affidavit of probable cause supporting warrant no. 87969 stated that a confidential informant in California, who had in the past proven reliable in providing California police officers with tips leading to arrests, had apprised California Detective Peyton that the package, which was being shipped from California to a "Barbara Barsh" at Black's address in Pennsylvania, contained cocaine. (*Id.* at 4a.) The affidavit further stated that the California police intercepted the package in California and found that it did, in fact, contain cocaine, and also provided that a Pennsylvania search of DMV and other records revealed that "Barbara Barsh" was probably a fictitious name. (*Id.*)

¶ 4 As a result of this affidavit, the Pennsylvania police obtained a warrant to search the package, which revealed the presence of a methamphetamine. (R.R. at 24a–25a.) Officer Donna Doran then delivered the package to Black's apartment, leaving it between the front and screen

---

**3.** Our supreme court recently ratified the use of anticipatory search warrants in *Common-* *wealth v. Glass*, 562 Pa. 187, 754 A.2d 655, 2000 Pa. Lexis 1523 (2000).

doors. After Diorio arrived at the apartment and moved the package inside, the police officers, acting pursuant to the anticipatory warrant, entered the apartment by force, having received no response to their "knock and announce." The police found Black and Diorio sitting in the living room with various controlled substances and drug paraphernalia on the table in front of them and on their persons. The package was leaning against a wall near the front door. (*Id.* at 31a–33a.)

¶ 5 Following their arrest, Black and Diorio filed motions to suppress, challenging the search of the apartment based on the *four corners* of the two search warrants and also based on the police officers' alleged failure to "knock and announce" before entering the apartment. (*Id.* at 8a–9a.) The challenge was grounded in the Fourth and Fourteenth Amendments to the U.S. Constitution. (*Id.*) The suppression court, having concluded that the search warrants were invalid, did not address the legality of the execution of the anticipatory warrant. (Trial court opinion, 10/13/99 at 7–8.)

¶ 6 In writing its opinion, the suppression court framed the issue as "whether evidence obtained in a warrantless search of a mail parcel in a foreign jurisdiction may provide probable cause for the issuance of a search warrant in this Commonwealth." [4] (Trial court opinion, 10/13/99 at 4.) The court concluded that both the search of the package in Pennsylvania and the subsequent search of the apartment were the fruits of the poisonous tree: the warrantless search of the package in California. (*Id.* at 7, citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).) [5] The suppression court then concluded that the illegal warrantless search of the package in Califor-

nia could not provide the probable cause to support the Pennsylvania warrants. (*Id.*)

¶ 7 Procedurally, this case therefore involves a challenge to the affidavit of probable cause supporting a search of the package in Pennsylvania: according to appellees, if that search was not supported by probable cause, then the anticipatory warrant flowing from that search was not supported by probable cause; therefore, the search of the apartment was illegal.

¶ 8 My disagreement with the majority's resolution of the question before us is based in part on its application of *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983), to the facts of this case. In *Sell, supra*, our supreme court reaffirmed the automatic standing rule as enunciated by the U.S. Supreme Court in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Put simply, *Jones* conferred automatic standing on defendants charged with possessory offenses on the strength of the charge itself. The gravamen of the automatic standing rule was that charging a defendant with possession of contraband and precluding him from challenging the police conduct which led to the seizure unless he claimed ownership put the protections of the Fourth and Fifth Amendments in conflict. The *Sell* court was called upon to re-examine the automatic standing rule because the *Jones* decision had been repudiated by the Supreme Court in favor of a threshold "reasonable expectation of privacy" test for a Fourth Amendment violation. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). As the *Sell* court observed:

> The *Rakas* Court shifted the focus from 'standing' to the merits of the underlying claim. The *Rakas* Court held that the scope of the interest

---

**4.** At the suppression hearing, the Pennsylvania police officer who spoke with the California police officer testified he assumed the California police had a warrant to search the package based on his prior frequent contacts with the California police, but he admitted he did not ask. (R.R. at 50a.) Because the Commonwealth bore the burden of producing

evidence at the suppression hearing, Pa. R.Crim.P. 323(h), the trial court properly could have found that the search in California was conducted without a warrant.

**5.** *Wong Sun* is a case decided under federal law.

protected by the Fourth Amendment is to be determined by 'whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.' *Rakas, supra* 439 U.S. at 143, 99 S.Ct. at 430. The Court further declared that, to be considered 'legitimate,' an expectation of privacy must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others.

*Id.* at 143 n. 12, 99 S.Ct. at 430 n. 12. *Sell, supra* at 58, 470 A.2d at 468. Thus, the *Sell* court concluded:

> We decline to undermine the clear language of Article I, section 8 by making the Fourth Amendment's amorphous 'legitimate expectation of privacy' standard a part of our state guarantee against unreasonable searches and seizures. We do so not only because we find the United States Supreme Court's analytical distinction between 'standing' and 'threshold substantive question,' *see Rakas, supra* 439 U.S. at 139 n. 7, 99 S.Ct. at 428 n. 7, unhelpful to our interpretation of Article I, section 8's protection, but also because we believe the United States Supreme Court's current use of the 'legitimate expectation of privacy' concept needlessly detracts from the critical ele-

ment of unreasonable governmental intrusion.

> . . . .

*Sell, supra* at 66, 470 A.2d at 468 (citation omitted) (emphasis added).

¶ 9 In *Commonwealth v. Peterson,* 535 Pa. 492, 636 A.2d 615 (1993), our supreme court revisited the question of automatic standing in a case involving the warrantless search and seizure of drugs from an abandoned building. The court determined that under *Sell, supra,* Peterson had automatic standing to challenge the search; however, he lacked a reasonable expectation of privacy in the premises of an abandoned building. As the *Peterson* court stated:

> However, having had his standing acknowledged, appellant is then required to establish that the challenge he has without question legitimately raised is itself legitimate. In order to do so, he must demonstrate that he held such a privacy interest which was actual, societally sanctioned as reasonable, and justifiable in the place invaded that the warrantless entry of the police violated his right under the Constitution of this Commonwealth, Article 1, Section 8, to be 'secure . . . against unreasonable searches and seizures.'

*Id.* at 497, 636 A.2d at 617 (citation omitted). In short, Peterson's automatic standing did not relieve him of his evidentiary burden on the merits of his claim: that the warrantless entry into the storefront by law enforcement officials violated a reasonable and legitimate expectation of privacy.[6]

---

**6.** I would be less than candid if I did not concede that supreme court authority since and including *Peterson* has blurred the line between the Pennsylvania and federal standing rules. *Peterson* emphasized that although a defendant may have standing to file a motion to suppress, he must still establish a personal privacy interest in the place or thing seized as a condition precedent to any challenge of the reasonableness of the search and seizure. In effect, defendants charged with possessory offenses may file suppression motions challenging the seizure of the drugs they are charged with possessing; however, before

they can succeed on the merits, they are required to claim an ownership interest in the drugs in order to establish a reasonable expectation of privacy in them. This would appear to be exactly what the majority has done and precisely what the *Sell* court rejected in its establishment of automatic standing. Based on the apparent confusion in this area and what appears to be a movement closer to the federal standard through recent cases, our supreme court may wish to re-examine the continuing vitality of the concept of automatic standing.

¶ 10 The majority agrees that *Sell* is still good law in this Commonwealth. What concerns me about the majority's rationale, however, is that I believe it mirrors that of the *Rakas* court and not that of *Sell*. The majority, referencing the *Peterson* analysis and stating the appellees have *automatic standing*, then proceeds to couple appellees' reasonable expectation of privacy with a requirement of some ownership or possessory interest *in the package seized in the apartment.* To wit: Appellees cannot have a reasonable expectation of privacy in something which they claim does not belong to them.[7] This, I respectfully suggest, eliminates the very purpose of automatic standing. Rather, the reasonable expectation of privacy analysis would more appropriately be addressed to whether the police conduct was unreasonable because it violated a legitimate expectation of privacy in Black's apartment.

¶ 11 To this end, I would analyze the case as follows: Both Pennsylvania searches at issue in this case are governed by Pennsylvania law, which, as indicated, confers automatic standing on a defendant accused of a possessory offense to move to suppress evidence introduced against him. *Peterson, supra* ; *Sell, supra.* Thus, under the authority of *Sell,* appellees had automatic standing to challenge the search of Black's apartment and seizure of drugs found therein because both appellees were found on the premises and both were charged with possession of drugs found in the apartment, including the package. Under *Peterson* 's analysis, appellees have also established a reasonable expectation of privacy in the place where the evidence was seized because it is a private residence. Therefore we must go forward and address appellees' claim that the warrant to search the apartment was invalid because the affidavit of probable cause supporting the warrant included evidence illegally obtained during the California search.

¶ 12 At a suppression hearing, a defendant who has standing and who has articulated a reasonable expectation of privacy, thereby indicating the necessity for a warrant, can always challenge the veracity of information contained in the affidavit of probable cause supporting the warrant. *Commonwealth v. Miller*, 513 Pa. 118, 127, 518 A.2d 1187, 1192 (1986); *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973); *Commonwealth v. Mejia–Arias*, 734 A.2d 870, 874 (Pa.Super.1999). " '[T]he right to challenge the truthfulness of recitals in a warrant follows from the command of *Aguilar–Spinelli*[8] that the magistrate make a "detached and objective determination" of probable cause.' " *Miller, supra* at 129, 518 A.2d at 1192, quoting *Hall, supra* at 205, 302 A.2d at 344. When

---

**7.** The majority also relies upon statements made by appellees at the time of the search denying ownership of the package to decide that appellees abandoned the package. If I had to reach this issue, I would find the better view expressed by Professor LaFave.

> If a defendant claims standing derived from his interest in the premises searched, he will not prevail if it appears that he had abandoned the premises prior to the time the search being objected to occurred. But under the modern expectation-of-privacy approach the abandonment question must be examined in terms of reasonable expectation flowing from conduct rather than in a technical, property sense. *In any event, abandonment must be distinguished from a mere disclaimer of a property interest made to the police prior to the search, which under the better view does not defeat standing.*

Wayne R. LaFave et al., Criminal Procedure § 9.1, at 463 (2d ed.1992) (emphasis added). Moreover, the whole purpose of automatic standing on a possessory charge is that a defendant does not have to claim ownership of the contraband. I believe we would be hard pressed to find very many defendants who claim ownership of illegal drugs during a search.

**8.** *Spinelli v. U.S.*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

The Supreme Court subsequently abandoned the *Aguilar–Spinelli* test in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); however, the *Gates* test still requires that information contained in the affidavit be reliable under a totality of the circumstances.

so challenged, the Commonwealth then bears the burden of producing evidence establishing the validity of the warrant by showing that the evidence underlying the affidavit of probable cause is reliable. *Commonwealth v. Ryan*, 268 Pa.Super. 259, 407 A.2d 1345, 1348 (1979), citing *Hall, supra. See also* Pa.R.Crim.P. 323(h).

¶ 13 In this case, appellees challenged the affidavit of probable cause as defective because the evidence relied upon was allegedly obtained in an **unconstitutional** manner, not because the affidavit contained **unreliable** information. As the majority correctly notes, Fourth Amendment protections, which are the only protections appellees invoked, are, however, personal and can only be asserted by one who has suffered the violation. (Majority opinion at 1259, citing *Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).) Additionally, Fourth Amendment violations do not necessarily render evidence unreliable merely because it was obtained as a result of the violation. **Wayne R. LaFave, et al.**, Criminal Procedure § 9.1, at 461 (2 nd ed.1992).

¶ 14 Professor LaFave explains the distinction between evidence seized illegally based on a constitutional violation and evidence that is unreliable as follows. A person may confess to a crime and implicate another in that crime as a result of a violation of the protections afforded by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The confession would therefore have been obtained illegally. The person implicated by the confession, who is subjected to an arrest or search based on the confession, will, however, lack standing to challenge the legality of the confession, obtained in violation of another's constitutional rights. The person implicated by the confession may, however, raise his own Fourth Amendment claim that the warrant to arrest or search him is invalid because based on unreliable evidence if the police obtained the confession by using physically or psychologically coercive tactics. *LaFave*, Criminal Procedure § 9.1, at 461. *See also id.*, § 9.1, at

462 (discussing *Wong Sun, supra*, in which the police unlawfully entered Toy's premises and illegally arrested him, after which Toy claimed his innocence but implicated Yee. The police then entered Yee's premises and found drugs there, which Yee said he obtained from Toy and Wong Sun. The Supreme Court found that Toy had standing to object to the seizure of evidence from Yee because the illegal entry into Toy's premises, followed by his arrest, led to the seizure of evidence from Yee. The Court found, however, that Wong Sun did not have standing because he could not object to an illegal search of another's premises).

¶ 15 According to the majority, California follows federal law on the issue of standing. (Majority opinion at 1259–60 (citations omitted).) Furthermore, our supreme court recently held in a case such as this that the law of the foreign jurisdiction applies to determine the legality of a search. *Commonwealth v. Sanchez*, 552 Pa. 570, , 716 A.2d 1221, 1223 (1998). Under California and federal law, Barbara Barsh was the only person with standing to raise the legality *of the California search* of a package addressed to Barbara Barsh. If there is a standing question presented in this case, therefore, it is that under California law, appellees do not have standing to raise a violation of Barbara Barsh's constitutional rights based on a search that occurred in California. This is distinct from appellees' standing to challenge the conduct of the Philadelphia police in searching Black's Philadelphia apartment and seizing evidence, including the package, therefrom.

¶ 16 The trial court found, however, that in addition to attacking the truthfulness of the facts recited in an affidavit, our supreme court has also allowed a defendant to attack the legality of the search that led to the evidence supporting the affidavit of probable cause. *See Sanchez, supra* at 575, 716 A.2d at 1223 ("The result of a canine sniff constitutes admissible evidence in both California and Pennsylvania, and

can be used to support a search warrant in Pennsylvania *so long as the sniff was conducted legally* [ ]") (emphasis added); *Commonwealth v. Bennett*, 245 Pa.Super. 457, 369 A.2d 493, 494 (1976) ("the use in this Commonwealth of information secured through a valid, legal, properly authorized wiretap in a foreign jurisdiction is not in contravention of the Pennsylvania anti-wiretapping statutes [which would not allow such a wiretap], and ... the evidence seized in Pennsylvania under such a warrant is admissible.[ ]").

¶ 17 The issue of standing to challenge the legality of the foreign jurisdiction's search did not, however, arise in *Sanchez, supra, Bennett, supra,* or *Commonwealth v. Corbo*, 295 Pa.Super. 42, 440 A.2d 1213 (1982), the cases upon which the *Sanchez* court relied. In *Sanchez, supra*, the package searched in California was addressed to one of the defendants. *Sanchez, supra* at 575, 716 A.2d at 1223 (appellant Sanchez was the person to whom the package was addressed). In *Bennett, supra*, the wiretap was conducted in New Jersey but included telephone calls received from and made to Bennett's home in Pennsylvania. *Bennett*, 369 A.2d at 493. Finally, the *Corbo* court did not address the legality of the wiretap at issue in that case because the parties did not argue its illegality. *Corbo*, 440 A.2d at 1214.

¶ 18 Furthermore, the supreme court in *Sanchez, supra*, specifically limited its review solely to the conflict of laws question as to whether Pennsylvania or California law applied in evaluating the legality of a canine sniff. The canine sniff of the package in California was used to support the warrant to search the package in Pennsylvania. The court decided that "if the courts of a sister state determine that a canine sniff is not a search in that state, the propriety of a sniff initiated by that state's officers and conducted within that state's borders must be evaluated under the law of that state." *Id.* at 578, 716 A.2d at 1225.

¶ 19 In remanding for further suppression proceedings, the *Sanchez* court specifically expressed no opinion "on whether appellants [Sanchez, the addressee of the package, and his two co-defendants who were present in the apartment at the time the search was conducted] had any reasonable expectation of privacy in the package sitting in a California Federal Express office." *Id.* at 579 n. 4, 716 A.2d at 1225 n. 4. *Sanchez* cannot be relied upon for any other proposition than its narrow holding, and therefore is inapplicable to this case.

¶ 20 In conclusion, I would reverse the trial court because of its incorrect reliance on *Sanchez* to determine that the warrants issued in Pennsylvania were invalid because the search of the package in California was illegal. To the extent the majority finds that these appellees lacked standing to challenge the legality *of that search*, I would therefore agree. For me, however, it is beyond peradventure that appellees possessed standing and a reasonable expectation of privacy in the apartment. This is sufficient to allow a testing of the probable cause to secure the warrants, and it is on the basis of this test that appellees' claim must fail.

¶ 21 I therefore respectfully concur in the result reached by the majority.