J-A24032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHNNY PEREZ | |
| Appellant | No. 1923 EDA 2015 |

Appeal from the Judgment of Sentence entered December 12, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012976-2013

BEFORE:  BOWES, J., OTT, J., and SOLANO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED OCTOBER 26, 2016**

Appellant, Johnny Perez, appeals from the judgment of sentence of eight years of reporting probation, imposed by the trial court after it convicted Appellant of possession with intent to deliver cocaine.[1]  After careful consideration, we affirm.

The trial court summarized the evidence supporting its verdict as follows:

> On June 17, 201[3], at approximately 9:40 p.m., Philadelphia Police Officers Brendan McCauley and Jared Krzywicki were on duty in the area of Marshall and Venango Streets in Philadelphia.  The two officers witnessed the Appellant, operating a red Hyundai Elantra, go through a red light on Erie Avenue.  The officers pulled Appellant over for a traffic light violation.  Upon exiting his patrol car and approaching Appellant's vehicle, Officer McCauley saw Appellant

---

[1] 35 P.S. § 780-113(a)(30).

reach into his center console and shut it abruptly. Officer McCauley relayed this information to his partner. Without being asked to do [so] by the officers, Appellant then opened the driver side door and exited the vehicle, at which point he was detained by Officer Krzywicki at the rear of the vehicle. Officer Krzywicki then went into the vehicle to the center console where Officer McCauley said he saw Appellant put something. Officer Krzywicki recovered from the center console two clear baggies, each containing eleven smaller orange-tinted baggies containing alleged crack-cocaine and four-hundred and three dollars in cash.

At trial, Officer James Trappler was introduced as a narcotics expert. He testified that, based on the totality of the evidence discovered on the night of June 17, 2013, the narcotics were possessed with intent to distribute. His opinion was based on the way in which the cocaine powder was packaged (larger packets, forty to fifty dollars per unit), the total weight (12.59 grams), and the denomination of the four-hundred and three dollars found being consistent with the sale of smaller packets from ten to fifteen dollars. He also clarified that the seizure analysis indicated the positive presence of cocaine.

Trial Court Opinion, 11/24/15, at 2.

The trial court rendered its guilty verdict on September 3, 2014. On December 12, 2014, the trial court sentenced Appellant to eight years of reporting probation. Appellant did not file a timely post-sentence motion or notice of appeal. However, on March 9, 2015, he filed a petition for post-conviction relief in which he requested permission to appeal *nunc pro tunc*. The trial court reinstated Appellant's direct appeal rights on June 19, 2015, and Appellant timely appealed on June 24, 2015.

On appeal, Appellant presents two issues for our review:

1. Should not the lower court's order denying [A]ppellant's motion to suppress be reversed where the police conducted a routine traffic stop and searched the center console of the

- 2 -

vehicle [A]ppellant was driving without reasonable suspicion to justify a search for weapons?

2. Did not the Commonwealth fail to prove constructive possession beyond a reasonable doubt by [A]ppellant's mere presence in a vehicle where drugs were found and his movements during the vehicle stop, such that [A]ppellant's conviction for knowing and intentional possession of a controlled substance must be vacated due to insufficient evidence?

Appellant's Brief at 4.

## Suppression

In his first issue, Appellant argues that the trial court erred when it denied his motion to suppress the cocaine evidence obtained from the console of the vehicle. Relevant to this issue, we reference our standard of review:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Ranson*, 103 A.3d 73, 76 (Pa. Super. 2014) (internal citations and quotations omitted).

Preliminarily, the Commonwealth contends that Appellant "made no attempt below, and makes no attempt [on appeal], to argue that he had a reasonable expectation of privacy in the Hyundai Elantra; he failed to allege that he owned the car, leased the car, legitimately borrowed the car, or had any other cognizable interest in it." Commonwealth's Brief at 6, n.1. We have explained:

> A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy. Standing requires a defendant to demonstrate one of the following: (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element the element of possession; or (4) a proprietary or possessory interest in the searched premises. A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. **Commonwealth v. Hawkins**, 553 Pa. 76, 718 A.2d 265, 267 (1998); **Commonwealth v. Black**, 758 A.2d 1253, 1256–1258 (Pa.Super.2000); **Commonwealth v. Torres**, 564 Pa. 86, 764 A.2d 532, 542 (2001)[]. Whether defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion. **See Commonwealth v. Millner**, 585 Pa. 237, 888 A.2d 680, 691 (2005). The determination whether defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant.

*Commonwealth v. Burton*, 973 A.2d 428, 435 (Pa. Super. 2009) (*en banc*).

- 4 -

This Court in **Burton** determined that the defendant did not have a cognizable expectation of privacy in the vehicle he was operating at the time of a traffic stop, stating:

> [T]he vehicle was not owned by Appellant. The vehicle was not registered in Appellant's name. Appellant offered no evidence that he was using the vehicle with the authorization or permission of the registered owner. Appellant offered no evidence to explain his connection to the vehicle or his connection to the registered owner of the vehicle. Appellant failed to demonstrate that he had a reasonably cognizable expectation of privacy in a vehicle that he did not own, that was not registered to him, and for which he has not shown authority to operate.

**Commonwealth v. Burton**, 973 A.2d at 436.

Similarly, in the case at bar, Appellant failed to establish or even explore his standing and legitimate expectation of privacy in the Hyundai Elantra. The Commonwealth presented the only two witnesses at the suppression hearing: Officer McCauley and Officer Krzywicki. Appellant did not present any witnesses. Officer McCauley, on cross-examination, was asked by Appellant's counsel whether the vehicle was "in the name" of Appellant's passenger, Colas Colon. N.T., 6/3/14, at 14. Officer McCauley responded, "From what I recall, yes." **Id.** Officer Krzywicki, when asked on cross-examination whether the car was registered to "the passenger's wife," answered, "I don't recall." **Id.** at 22. This was the extent of the testimony concerning Appellant's connection to the vehicle. Accordingly, Appellant failed to meet his burden of establishing a legitimate expectation of privacy in the Hyundai Elantra.

Further, even had Appellant established a reasonable expectation of privacy in the vehicle, the expectation of privacy with an automobile is "significantly less than that relating to one's home or office." *Commonwealth v. Holzer*, 389 A.2d 101, 106 (Pa. 1978) (emphasis in original). Moreover, this Court, quoting the United States Supreme Court, has observed, "[u]pon a challenge to the legality of a protective search of a vehicle, an individual's right to privacy yields to officer safety when the Commonwealth meets its burden of establishing that the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Commonwelath v. Cartagena*, 63 A.3d 294, 306–07 (Pa. Super. 2013) (*en banc*), *quoting Michigan v. Long*, 463 U.S. 1032, 1049; 103 S.Ct. 3469 (1983).

Appellant argues that the police officers lacked reasonable suspicion to search the console of the vehicle, and specifically asserts that the Commonwealth failed to present evidence of "specific and articulable facts to justify a search of the passenger compartment for weapons." Appellant's Brief at 8. Appellant contends that his movements did not justify the search because they were not "furtive," that the police lacked justification for the search of the console to effectuate a "protective sweep" for officer safety, and that the stop in a high crime area was insufficient to support a protective sweep. *Id.* at 9-14.

- 6 -

Appellant relies primarily on this Court's *en banc* decision in ***Commonwealth v. Cartagena***, 63 A.3d 294, 306–07 (Pa. Super. 2013), in which we affirmed the trial court's suppression of evidence on a record that lacked information about the police officers' training or experience, the officers' belief regarding the presence of a weapon in the vehicle, whether the encounter occurred in a high crime area, or whether the appellant made furtive movements or posed a safety threat. 63 A.3d at 302-303. We noted that the stop occurred at night, the defendant's car windows were tinted, and the defendant appeared nervous. ***Id.*** at 304. Nevertheless, we concluded that "the totality of circumstances, taken together, fall short of a reasonable suspicion to conduct the search at issue in this case." ***Id.*** In affirming the trial court, we observed:

> On this barebones record that establishes nothing more than a late night stop of a vehicle suspected of having illegally tinted windows whose driver exhibited nervousness while complying with the officers' orders to lower the windows and produce [his] license, insurance and registration information, we conclude the Commonwealth did not meet its burden of establishing the legality of the search at issue.

***Id.*** at 307.

Approximately three months after ***Cartagena*** was decided, a three-member panel of this Court concluded in ***Commonwealth v. Buchert***, 68 A.3d 911 (Pa. Super. 2013), that suppression was not warranted where "the combination of Appellee's furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and the night time stop, was sufficient to warrant a reasonable

police officer to believe that his safety was in danger and that Appellee might gain immediate control of a weapon." 68 A.3d at 916-917. We distinguished **Cartagena** because it "did not involve furtive movements." **Id.** at 916.

Turning to facts of this case, we note that a determination of whether reasonable suspicion exists must be based on the totality of the circumstances **and involves a fact-specific case-by-case inquiry**. **Commonwealth v. Scarborough**, 89 A.3d 679, 683 (Pa. Super. 2014) (emphasis added). "[W]here a sufficient number of [circumstances] coalesce, reasonable suspicion will be found." **Id.**

At the suppression hearing, the Commonwealth presented Officer McCauley, who testified to stopping Appellant for violating the Vehicle Code by driving through a red light. N.T., 6/3/14, at 6. Officer McCauley stated:

> We pulled the vehicle over. I believe it was [the intersection of] Marshall and Venango. As we conducted [the] vehicle investigation, just like any other time, myself and my partner exited the vehicle. As I'm coming up to the vehicle I saw [Appellant] reach into the center console and shut it abruptly. And at this time I'm telling my partner just to keep [a] safe eye on him. At this time [Appellant] opens the vehicle driver side door. I don't know if it was [an] attempt to flee or just to get out of the vehicle. And at that time my partner [Officer Krzywicki] detained the male and told him to put his hands up on the vehicle for safety purposes.

**Id.** Officer McCauley explained that he was shining a flashlight into Appellant's vehicle when he saw Appellant shut the console. **Id.** at 7. He also stated that he warned his partner because Appellant "was reaching into

- 8 -

[the] center console." *Id.* at 8. Two people were in the vehicle, and Officer McCauley's partner frisked Appellant, while Officer McCauley "pulled out [Appellant's] passenger at the time just for safety frisk as well." *Id.*

Officer McCauley testified that he had worked as an officer for the City of Philadelphia for three years, and was "very familiar" with the area where he stopped Appellant. *Id.* at 9. He described the area as a "high drug area, a lot of shootings, high crime." *Id.* On cross-examination, Officer McCauley was asked, "I assume under the circumstances you wanted to communicate what you are seeing to your partner in a quick and discreet manner so you can get the information in that fashion; is that fair to say?" *Id.* at 12. Officer McCauley responded: "Yes. Always primarily officer safety first." *Id.*

Next, Officer McCauley's partner, Officer Krzywicki, testified about stopping Appellant for the Vehicle Code violation. Officer Krzywicki stated that Appellant "actually got out of the car before we got up to the vehicle." *Id.* at 17. He explained:

> As we were approaching, my partner yelled to me, Watch it, he just put something into the console. And right after that point [Appellant] got out of the vehicle and started walking back towards us. I stopped him, detained him at the back of the vehicle. At that time I believe Officer McCauley walked up and got the passenger out. Officer McCauley kept an eye on him. From there I went into the vehicle in the center console where Officer McCauley said he saw him put something . . .

*Id.* at 17-18. Officer Krzywicki testified that he went into the center console "just to do [a] safety frisk. Like I said, I didn't ask at the time what he put

in the center console, [I looked] to make sure there were no weapons in it."
*Id.* at 18.

Regarding his professional experience, Officer Krzywicki stated that he had been a Philadelphia police officer for seven years, and conducted "hundreds, maybe thousands" of vehicle stops, with "over 30" of them in the area of Marshall and Venango. *Id.* at 19. He described the area "at that time" as having "a very violent war going on between two families on the block of 7th Street." *Id.* at 20.

The trial court took the matter under advisement, and ultimately denied Appellant's suppression motion. The trial court referenced *Buchert*, and reasoned:

> The [C]ourt in *Buchert* determined that the proper inquiry is whether, under the totality of the circumstances, police possessed reasonable suspicion to conduct a *Terry* protective weapons search. In the instant case, Appellant was routinely stopped after a traffic violation at 9:40 p.m. and was observed by officers reaching into the center console of the vehicle and abruptly shutting it. Officer McCauley warned his partner to "keep a safe eye on him." Appellant then opened the driver's side door, exited the vehicle and started walking back towards the officers. Officer Krzywicki testified that he believed Appellant was trying to get to someone that lived on the block. At this point, he was detained for safety purposes. Officer McCauley additionally described the area as a "high drug area, a lot of shootings, high crime area." Officer Krzywicki then conducted a safety frisk of the center console and discovered the evidence at issue. This case is analogous to *Buchert* considering the nature and time of the stop, Appellant's movement inside the vehicle, behavior after being stopped, and the high crime area in which the stop took place. Taken as a whole, the facts of this case rise to a level sufficient to warrant a reasonable officer to believe that his safety was in danger and that Appellant might gain immediate control of a weapon.

- 10 -

Trial Court Opinion, 11/24/15, at 6-7 (citations to notes of testimony and footnote omitted).

Our review of the suppression record leads us to conclude that the trial court's factual findings are supported, and the totality of the circumstances sustains the officers' reasonable suspicion that Appellant may have possessed a weapon. *See, e.g., Commonwealth v. Murray*, 936 A.2d 76 (Pa. Super. 2007) (upholding a protective search of the interior of a vehicle where police officers stopped a defendant for a motor vehicle violation, in a high crime area, and officers saw "excessive movement" inside the car); *Commonwealth v. Thompson*, 985 A.2d 928, 936 (Pa. 2009) (a stop in a high crime area when coupled with other factors may support reasonable suspicion of dangerous or illegal activity).

We further note that Appellant misstates the evidence when he argues that "neither officer characterize[d Appellant's] motion [in regard to the center console] as furtive, which is to say neither officer testified that the motion led them to suspect that [A]ppellant had just secreted a weapon in the center console, or that the motion made them concerned for their safety." Appellant's Brief at 10. Appellant also claims that the officers' testimony "does not establish that either officer suspected [A]ppellant was armed or dangerous." *Id.* at 13. Although neither officer used the word "furtive," they testified unequivocally that their actions were based on a

- 11 -

concern for their safety. Our Supreme Court has addressed the safety concerns of police during nighttime vehicle stops as follows:

> The courts also have plainly held that officer safety concerns are heightened during traffic stops. The United States Supreme Court recently emphasized that "[t]raffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." **Rodriguez v. United States**, 135 S.Ct. 1609, 1616 (2015) (internal quotation marks and citations omitted). Safety concerns are even greater when the motor vehicle stop occurs at night.

**Commonwealth v. Chase**, 960 A.2d 108, 120 (Pa. 2008).

Consistent with the foregoing, even if Appellant had established an expectation of privacy in the vehicle, reasonable suspicion for the search of the center console of the vehicle was supported by a combination of factors in this case, including Officer McCauley's testimony that he was concerned for officer safety because, upon approaching the vehicle, he saw Appellant "reach into the center console then shut it abruptly," and exit the vehicle without waiting for the officers. N.T., 6/3/14, at 6. We therefore discern no error by the suppression court in denying Appellant's suppression motion.

### Conviction for Possessing Cocaine with Intent to Deliver

In his second issue, Appellant claims there was insufficient evidence to support his conviction for possessing cocaine with the intent to deliver because "evidence of constructive possession was legally insufficient to support the verdict." Appellant's Brief at 16. Appellant maintains that his "movements toward the center console during a traffic stop cannot sustain a finding of proof beyond a reasonable doubt that he constructively possessed

the drugs concealed within the center console, especially where the vehicle is owned by the wife of the front passenger situated directly adjacent to said center console." *Id.* at 19.[2]

Regarding a sufficiency claim as it pertains to Appellant's drug conviction and constructive possession argument, this Court recently explained:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Roberts*, 133 A.3d 759, 767 (Pa. Super. 2016) (quoted citation omitted).

---

[2] As previously noted, there was no proof of ownership of the vehicle. The trial court made no finding on that issue.

Appellant was convicted under Section 13(a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-113(a)(30), which provides:

> The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> . . .
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

To sustain a conviction for possession with intent to deliver, "the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance." **Commonwealth v. Roberts**, 133 A.3d at 767 (quoted citation omitted).[3] "In narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband." **Id.** (quoted citation omitted). Where the police do not discover the controlled substance on an appellant's person, it must be determined whether the Commonwealth sufficiently established that the appellant had constructive

---

[3] Appellant challenges only the possession element of the offense. He does not dispute that cocaine is a controlled substance. **See** Act, § 4, 35 P.S. § 780-104; 28 Pa. Code § 25.72.

- 14 -

possession of the controlled substance. *Id.* This Court has defined constructive possession as follows:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012) (quoted citations omitted). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." *Id.* It is possible for two people to have joint constructive possession of an item of contraband. *Commonwealth v. Sanes*, 955 A.2d 369, 373 (Pa. Super. 2008).

Here, the trial court, sitting as the fact finder, found that Appellant constructively possessed the cocaine recovered from the center console and explained its reasoning as follows:

> In *Commonwealth v. Cruz*, Appellant was found to have constructive possession over a handgun found in the compartment on the passenger side of the vehicle after being observed moving sideways toward the passenger side of the vehicle prior to being stopped by police. *Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. 2011). Appellant also acted in a way that exhibited guilt by giving officers several names and birthdates. *Id.* Under those circumstances, the

court concluded that appellant had knowledge of the gun, and had the power and intent to exercise control of the gun and therefore, had constructive possession. *Id.* This case is similar to *Cruz* in that Appellant exhibited control over and knowledge of the drugs by going into the center console as he was being pulled over by police. Appellant also acted in a manner that would put officers on alert by getting out of the vehicle during a routine traffic stop without being instructed to do so.

Viewing the evidence in [a] light most favorable to the Commonwealth, Appellant reached into the center console and abruptly shut it as officers were approaching the vehicle. After detaining Appellant, Officer Krzywicki recovered from the center console two clear baggies each containing eleven smaller orange-tinted baggies holding what was later identified as cocaine powder. Upon searching the Appellant himself, four-hundred and three dollars were found. Moreover, Appellant was driving the car in which the drugs were found. Taken together, these facts demonstrate that Appellant exercised conscious dominion, and intent to exercise that control, over the cocaine.

Trial Court Opinion, 11/24/15, at 4-5 (citations to notes of testimony omitted).

The trial court's determination that Appellant constructively possessed the cocaine recovered from the center console of the vehicle comports with our review of the facts of record and the applicable legal authority set forth above. We reiterate that we may not substitute our judgment for the fact finder. Our "critical inquiry is not whether the court believes the evidence established guilt beyond a reasonable doubt, but whether the evidence believed by the fact-finder was sufficient to support the verdict. The proper question is not whether [Appellant's] contentions are supported by the record, but whether the verdict is so supported." *Commonwealth v.*

*Sinnott*, 30 A.3d 1105, 1110 (Pa. 2011) (citation omitted). Accordingly, Appellant's sufficiency claim is without merit.

In sum, after careful review of both the record and pertinent legal authority, we find no merit to Appellant's suppression and sufficiency claims. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2016