**Commonwealth v. Aviles**

238

Brian Gerald McDonnell, for Commonwealth.
Lara Christine Glenn Hoffert, for defendant.

YATRON, *J.*, April 24, 2009—

## PROCEDURAL HISTORY

On August 15, 2006, a jury found the defendant guilty of simple assault, 18 Pa.C.S. §2701(a)(2); recklessly endangering another person, 18 Pa.C.S. §2705; firearms not to be carried without a license, 18 Pa.C.S. §6106(a)(1); possession of instrument of crime—concealed deadly weapon, 18 Pa.C.S. §907(b); and receiving stolen property, 18 Pa.C.S. §3925(a).[1] Then, on September 19, 2006, the defendant pled guilty to persons not to possess, use, manufacture, control, sell or transfer firearms, 18

---

1. The jury found the defendant not guilty on Count one, aggravated assault—18 Pa.C.S. §2701(a)(1); Count two, simple assault—18 Pa.C.S. §2701(a)(1); and Count seven, possession of an instrument of crime—18 Pa.C.S. §907(a).

Pa.C.S. §6105(a)(1). After accepting the defendant's plea, this court immediately sentenced the defendant on all of the above counts to serve an aggregate term of eight years and four months to 22 years in a state correctional facility.

On July 27, 2007, counsel was appointed to represent the defendant with regard to his post conviction claim. However, due to unforeseen difficulties, a formal PCRA petition was not filed until October 22, 2008.[2] After reviewing the defendant's claims, PCRA counsel filed a " 'no merit' letter pursuant to *Finley* and *Turner* requesting leave of court to withdrawal as counsel," on November 26, 2008, in which she asserted that the defendant's claims lacked any merit and requested to withdraw from the case. This court agreed with her representations and granted her request to withdrawal from the case. We also gave the defendant the appropriate notice that we intended to dismiss his petition as a result of the representations of PCRA counsel. On January 2, 2009, this court dismissed the defendant's PCRA petition. Then, on February 2, 2009, the defendant filed the following appeal.

The defendant's concise statement of errors complained of on appeal reads as follows:[3]

"(1) Trial counsel failed to litigate a motion to suppress petitioner's statements that were not knowing and intelligent;

2. PCRA counsel was initially appointed prior to the defendant filing a formal PCRA petition. The defendant then delayed filing a formal petition until the aforementioned date. As a result, this court was unable to move forward with this matter until this was perfected.

3. See the defendant's "concise statement of errors complained of on appeal," which was filed on February 24, 2009.

"(2) Trial counsel failed to properly cross-examine and impeach C.I. Jeffrey Reichart as to the procedures used to obtain petitioner's statement;

"(3) Trial counsel was ineffective for failing to adequately investigate the procedures of C.I. Jeffrey Reichart used in obtaining petitioner's statement;

"(4) Trial counsel failed to object to the introduction at trial of petitioner's statement, obtained in violation of petitioner's constitutional [sic] rights.

"(5) Trial counsel failed to litigate a motion to suppress the statements of witness Jose Hernandez-Martinez alleging that petitioner gave him the gun.

"(6) Trial counsel failed to request that an instruction regarding accomplice be given to the jury; and

"(7) Trial counsel failed to request that an instruction regarding a corrupt source be given to jury regarding witness Martinez.

"(8) Trial counsel failed to properly cross-examine and impeach Jose Hernandez-Martinez to show bias where Martinez hoped for leniency in exchange for testimony against petitioner; and

"(9) Trial counsel was ineffective for failing to adequately investigate the Commonwealth's offering of leniency to Martinez in return for Martinez [sic] testimony against petitioner.

"(10) Trial counsel was ineffective for failing to adequately prepare for the presentation of petitioner's claim of self-defense at trial.

"(11) Trial counsel was ineffective for failing to put petitioner on the stand regarding petitioner's claim of self-defense.

"(12) Trial counsel was ineffective for misadvising petitioner to take a plea by telling petitioner that his sentence would run concurrent and that the jury would convict petitioner should he proceed to trial."

## DISCUSSION

When reviewing a PCRA court's denial of a petition for post-conviction relief, the appellate court must examine whether the PCRA court's determination is supported by the record and is free from legal error. *Commonwealth v. Hall,* 867 A.2d 619, 628 (Pa. Super. 2005). The appellate court's scope of review is limited by the parameters of the PCRA. *Commonwealth v. Heilman,* 867 A.2d 542, 544 (Pa. Super. 2005). The Superior Court "grants great deference to the findings of the PCRA court if the record contains any support for those findings." *Commonwealth v. Carr,* 768 A.2d 1164, 1166 (Pa. Super. 2001). Moreover, the Superior Court "may affirm the decision of the trial court if there is any basis on the record to support the trial court's action; this is so even if [the Superior Court relies] on a different basis in [its] decision to affirm." *Heilman,* 867 A.2d at 544.

Each of appellant's 12 claims alleges the ineffectiveness of his trial counsel. When reviewing such matters we are guided by our Supreme Court which stated:

"In evaluating claims of ineffective assistance of counsel, we presume that counsel is effective. . . . To overcome this presumption, appellant must establish three factors. First, that the underlying claim has arguable merit. . . . Second, that counsel had no reasonable basis for his action or inaction. . . . In determining whether counsel's action was reasonable, we do not question

whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. . . . Finally, appellant must establish that he has been prejudiced by counsel's ineffectiveness; in order to meet this burden, he must show that but for the act or omission in question, the outcome of the proceedings would have been different. . . . A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs. . . . In the context of a PCRA proceeding, appellant must establish that the ineffective assistance of counsel was of the type which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt of innocence could have taken place." *Commonwealth v. Washington,* 592 Pa. 698, 712-13, 927 A.2d 586, 594 (2007) (internal quotations and citations omitted). With this in mind, we now address defendant's averments.

## A. *The Admissibility of Defendant's Statements*

In averments one through four, the defendant essentially argues that trial counsel failed to suppress, investigate or generally challenge the admissibility of the statements he made to the police. Due to the similarity of these arguments, some will be addressed concurrently.

### 1. Trial Counsel's Alleged Failure To Suppress the Defendant's Statements Pursuant to *Miranda*

The defendant first argues that his trial counsel should have filed a motion suppressing his statements because

he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. However, the facts of this case demonstrate that this allegation is meritless.

Our courts recognize that a valid waiver of *Miranda* must be made knowingly, voluntarily, and intelligently. *Commonwealth v. Ellis,* 700 A.2d 948, 955 (Pa. Super. 1997). When determining whether the defendant voluntarily waived his rights, "we must ascertain whether the waiver was the result of an intentional choice that was not subjected to undue governmental pressure." *Id.* Whereas, when determining whether the waiver was knowing and intelligent, "we focus upon the defendant's cognitive processes, *i.e.,* whether the defendant was aware of the nature of the choice that he made in relinquishing his *Miranda* rights." *Id.*

In the instant matter, the facts clearly demonstrate that the defendant voluntarily waived his *Miranda* rights. At trial, Officer Reichart testified that it only took two hours to take the defendant's statement. N.T., 8/15/06, p. 127. During this time, the defendant was offered water, food, and bathroom breaks whenever he required one. N.T., 8/15/06, p. 128. The officer also testified that the defendant was never offered anything in return for his statement, nor was he coerced at any time. *Id.* The defendant, however, also fails to proffer any evidence tending to show that he was coerced in any way into giving his statement. Therefore, there can be no question that his waiver was voluntary.

The facts adduced at trial also demonstrate that the defendant's waiver was knowing and intelligent. For example, Officer Reichart testified that he informed the defendant that he wanted to speak with him about the

shooting of the victim in this case. N.T., 8/15/06, p. 124. The defendant responded affirmatively, and the officer read the defendant his *Miranda* rights. N.T., 8/15/06, pp. 124-25. The officer then asked the defendant three questions which are printed at the top of the statement form:[4]

"Question: Do you understand your rights as I have explained them?

"Answer: Yes—and he initialed that answer, 'C.A.'

"Next question: Are you willing to give a statement?

"His answer was: Yes. He initialed that 'C.A.'

"Last question: Do you want to consult an attorney prior to giving a statement and have him present during any questioning?

"His answer was: No. He initialed that 'C.A.'" N.T., 8/15/06, p. 125, see also, exhibit no. 37, p. 258 (defendant's statement).

During the questioning, the defendant had no problem understanding English and did not appear to be under the influence of any mind-altering substances. N.T., 8/15/06, pp. 126-27. The defendant also never requested an attorney. N.T., 8/15/06, p. 126. Again, the defendant fails to proffer any evidence that would bring into doubt whether he knowingly, and intelligently understood and waived his *Miranda* rights. Moreover, the facts show that defendant acknowledged his statement by initialing each paragraph. N.T., 8/15/06, pp. 258-62, exhibit no. 37. These facts, clearly demonstrate that he was aware

---

4. See N.T. p. 258, exhibit no. 37 (defendant's statement).

of the consequences of his actions and that he knowingly, voluntarily and intelligently waived his *Miranda* rights.

The defendant specifically argues that his waiver of *Miranda* was not valid because he thought he was being questioned with regard to a separate unrelated offense.[5] However, the expected topic of questioning is irrelevant and does not impact the propriety of the *Miranda* waiver. The officer, when reading the defendant his *Miranda* rights, explained that he had "the right to consult an attorney prior to answering any questions . . . ." N.T., 8/15/06, p. 125. The officer also stated that "any statement you make can and will be used as evidence against you in a court of law." *Id.* The facts presented above demonstrate that the defendant understood these rights and knowingly waived them. The fact that he thought they were going to ask him about a different incident did not disturb his knowledge that he could request the assistance of an attorney at any time and that his statement may be used against him. Therefore, his argument fails and there can be no question that he knowingly waived his *Miranda* rights.

Based on the above, a motion to suppress the defendant's statements would have been meritless. Our courts have long recognized that "counsel can never be found ineffective for having elected not to raise a meritless claim." *Commonwealth v. Tilley,* 528 Pa. 125, 149, 595 A.2d 575, 587 (1991). Therefore, trial counsel cannot be held ineffective for this reason, and the defendant's claim must fail.

---

5. See "no merit letter" p. 4.

## 2. Trial Counsel's Alleged Failure To Investigate Whether the Defendant Properly Waived His *Miranda* Rights

In his third averment, the defendant argues that trial counsel failed to properly investigate the nature of his *Miranda* waiver. Our courts recognize that "[c]ounsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. . . ." *Commonwealth v. Johnson,* 966 A.2d 523, 535 (Pa. 2009). (citations omitted) "Counsel's unreasonable failure to prepare for trial is an abdication of the minimum performance required of defense counsel. . . ." *Id.* (internal quotations and citations omitted)

This claim goes part and parcel with the defendant's first claim. As noted above, there was no evidence suggesting that the waiver was improper. In fact, the evidence overwhelmingly demonstrates that his *Miranda* waiver was valid. Moreover, the defendant fails to present any evidence that would even suggest that counsel should have further investigated the nature of his waiver. Instead, he proffers a boilerplate claim of ineffectiveness with no facts to support such an allegation. Accordingly, his claim lacks merit, because he cannot demonstrate that counsel's act or omission "so undermined the truth-determining process that no reliable adjudication of guilt of [sic] innocence could have taken place." *Washington,* 592 Pa. at 711, 927 A.2d at 594.

### 3. Trial Counsel's Failure To Cross-Examine the Police Officer Regarding the Nature of Defendant's Waiver of *Miranda* and Trial Counsel's Failure To Object to the Introduction of Defendant's Statement at Trial

Lastly, in points two and four, the defendant argues that his trial counsel failed to cross-examine the police regarding the nature of his *Miranda* waiver and object to the introduction of the statements at trial. Unfortunately, the defendant fails to suggest a basis upon which counsel would have been justified to undertake either of these actions. This is most likely due to the fact that there is no legal basis allowing such action. However, we will briefly address the defendant's averments.

We begin by noting that a determination regarding the admissibility of the defendant's statement must be undertaken at a pretrial hearing. See Pa.R.Crim.P. 578. Thus, at the time of trial, this issue is waived and is no longer relevant. Therefore, counsel properly declined to cross-examine on this issue.

This court is also unable to discern any applicable objection relevant to the introduction of his statement which would have been proper under these circumstances. For the sake of review, we note that there can be no question that this testimony was relevant in accordance with Pa.R.E. 401-403. We also recognize that the defendant's statement cannot be considered hearsay as it is the admission of a party-opponent, which is an exception to hearsay rule. See Pa.R.E. 803. Therefore, the defendant's claim completely lacks merit and must fail. See *Washington,* 592 Pa. at 712, 927 A.2d at 594.

## B. *Trial Counsel's Alleged Failure To Suppress Mr. Hernandez-Martinez' Testimony*

The defendant next argues that trial counsel was ineffective for failing to file a pretrial motion to suppress Jose Hernandez-Martinez' statement that the defendant gave him the gun used in this incident. N.T., 8/15/06, p. 202. After reviewing the record, this court is unable to discern a basis for the filing of such a motion, and the defendant fails to provide an argument justifying his position. However, an abundance of caution compels us to review the possible legal theories which may be presented.

Initially, we note that Article I, Section 8 of the Pennsylvania Constitution as well as the Fourth Amendment of the United States Constitution ensure each individual's right to privacy. See *Commonwealth v. Black,* 758 A.2d 1253, 1259 (Pa. Super. 2000). However, our courts have long recognized that this right is personal to the individual and cannot be asserted on another's behalf. *Id.* As a result, even if the defendant believed that Mr. Hernandez-Martinez' privacy rights had been violated at some point in the investigation, he would be powerless to invoke those rights.

Secondly, and much more likely, the defendant may believe that his attorney should have invoked Mr. Hernandez-Martinez' Fifth Amendment right to not incriminate himself. Mr. Hernandez-Martinez testified that he took and kept the gun used in this incident from the defendant. N.T., 8/15/06, p. 202. Due to the incriminatory nature of this evidence, Mr. Hernandez-Martinez consulted with his attorney regarding his Fifth Amendment

rights prior to testifying. N.T., 8/15/06, p. 199. However, even though he was aware that his testimony may incriminate him, he wished to waive his Fifth Amendment privilege and wanted to testify. *Id.* Thus, there can be no question that Mr. Hernandez-Martinez knowingly and voluntarily waived his Fifth Amendment privilege.

Additionally, our Supreme Court has held that "Fifth Amendment rights are personal to the individual and may not be asserted by another." *Hull v. Hannahstown Mutual Insurance Co.,* 451 Pa. Super. 164, 170, 678 A.2d 815, 818 (1996) (quoting *Commonwealth v. L.E. Wilson Co.,* 458 Pa. 470, 473 n.2, 328 A.2d 502, 504 n.2 (1974)). Therefore, the defendant was powerless to invoke this witness' Fifth Amendment privileges. As a result, the defendant lacked standing to suppress the testimony of this witness, and the filing of any such motion would have been frivolous. See *Tilley,* 528 Pa. at 149, 595 A.2d at 587.

### C. *Trial Counsel's Alleged Failure To Investigate and Cross-Examine Mr. Hernandez-Martinez' Possible Bias*

There is no dispute that Mr. Hernandez-Martinez had pending drug-related charges at the time of this trial. In fact, he admitted as much at the beginning of his direct examination. N.T., 8/15/06, p. 198. However, he immediately explained that he had not been promised anything in return for his testimony. N.T., 8/15/06, p. 199. In averments eight and nine, the defendant argues that his counsel should have investigated and impeached Mr. Hernandez-Martinez regarding bias he may have resulting from any possible favorable treatment he received

from the district attorney. However, the defendant's claim fails because there was an obvious reasonable basis for his attorney's actions. See *Washington,* 592 Pa. at 712, 927 A.2d at 594.

As noted above, the defendant provided a statement to the police in which he admitted to shooting his gun in self-defense. N.T., 8/15/06, p. 258, exhibit no. 37. In fact, in the statement he even apologized to the victim's parents and hoped that they could forgive him. N.T., 8/15/06, p. 261, exhibit no. 37. This statement was read to the jury. N.T., 8/15/06, pp. 131-38.

Mr. Hernandez-Martinez' testimony largely corroborated the defendant's own version of the events as described by his written statement. Trial counsel's cross-examination of this witness highlighted these similarities and bolstered the defendant's self-defense argument. Consequently, there was no tactical reason to attack Mr. Hernandez-Martinez' credibility. In fact, doing so would have undermined the defendant's case. Therefore, counsel had a sound reason to decline challenging this witness and cannot be deemed ineffective for this reason. See *Washington,* 592 Pa. at 712, 927 A.2d at 594.

### D. *Trial Counsel's Alleged Failure To Request That This Court Charge the Jury With an Accomplice Liability and a Corrupt Source Instruction*

In averment six, the defendant alleges that his trial counsel was ineffective for declining to request an "accomplice" instruction. Similarly, in averment seven, the defendant claims "that an instruction regarding a corrupt source" should have been read to the jury. At first blush,

the defendant seems to be making two separate allegations of error. However, after further review, this court believes that the defendant is actually alleging that his attorney failed to request the accomplice testimony jury instruction.[6] We base this conclusion on the fact that an "accomplice" jury instruction has no applicability in this case, because there were no allegations that he acted as an accomplice in the commission of any of the charged crimes.[7] Instead, he is the sole individual charged. Secondly, the defendant's seventh averment makes reference to a "corrupt source" instruction, which is contained within the accomplice testimony instruction. For these reasons, this court believes that the defendant is essentially arguing that his counsel was ineffective for failing to ask that the accomplice testimony jury instruction be read to the jury. Regardless of this fact, the defendant's argument still fails for the following reasons.

The proper use of the accomplice testimony jury instruction was summarized by our Superior Court in, *Commonwealth v. Manchas, infra,* when it stated that:

"It is the rule in Pennsylvania that the testimony of an accomplice of a defendant, given at the latter's trial, comes from a corrupt source and is to be carefully scrutinized and accepted with caution; it is clear error for the trial judge to refuse to give a charge to this effect after being specifically requested to do so.... The justification for the instruction is that an accomplice witness will inculpate others out of a reasonable expectation of leni-

---

6. See Pennsylvania Standard Jury Instruction 4.01, accomplice testimony.

7. See Pennsylvania Standard Jury Instruction 8.306(a)(1), accomplice.

ency. . . . An accomplice charge is necessitated not only when the evidence requires an inference that the witness was an accomplice, but also when it permits that inference. . . . Thus if the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness' testimony. . . . Where, however, there is no evidence that would permit the jury to infer that a Commonwealth witness was an accomplice, the court may conclude as a matter of law that he was not an accomplice and may refuse to give the charge. . . . This is so because a trial court is not obliged to instruct a jury upon legal principles which have no applicability to the presented facts. There must be some relationship between the law upon which an instruction is required and the evidence presented at trial." *Commonwealth v. Manchas,* 430 Pa. Super. 63, 80-81, 633 A.2d 618, 627 (1993). (citations omitted) (internal quotations omitted) (internal corrections omitted)

"An accomplice is one who actively and purposefully engages in criminal activity and is criminally responsible for the criminal actions of his/her co-conspirators which are committed in furtherance of the criminal endeavor." *Commonwealth v. Rega,* 593 Pa. 659, 689-90, 933 A.2d 997, 1015 (2007). (internal quotations omitted) Our Crimes Code defines an accomplice as:

"(c) Accomplice defined.—A person is an accomplice of another person in the commission of an offense if:

"(1) with the intent of promoting or facilitating the commission of the offense, he:

"(i) solicits such other persons to commit it; or

"(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

"(iii) his conduct is expressly declared by law to establish his complicity." *Id.* at 689, 933 A.2d at 1014-15 (citing 18 Pa.C.S. §306(c)). The *Rega* court further explained that:

"[T]wo prongs must be satisfied for a person to be labeled an 'accomplice'. . . . First, there must be evidence that the person intended to aid or promote the underlying offense. . . . Second, there must be evidence that the person actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. . . . Further, a person cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. . . . There must be some additional evidence that the person intended to aid in the commission of the underlying crime, and then aided or attempted to aid." *Id.* at 690, 933 A.2d at 1015. (internal citations omitted)

This court, after reviewing the record, is unable to find any evidence that would even begin to suggest that Mr. Hernandez-Martinez acted as an accomplice for any of the charged offenses. In fact, the only testimony that touches upon the relationship between these individuals comes from Mr. Hernandez-Martinez himself.

During the trial, Mr. Hernandez-Martinez testified that the defendant told him he had some problems with a black male and then the defendant left the house. N.T., 8/15/06, p. 201. A few hours after this conversation the defendant returned and told Mr. Hernandez-Martinez that he had had to defend himself. N.T., 8/15/06, p. 202.

He then gave the gun to Mr. Hernandez-Martinez, who took the weapon and placed it in his room. *Id.* This testimony reveals that the witness did not have any knowledge about the defendant's criminal activity until after it had already taken place. Furthermore, it fails to show that he promoted or had any active participation in any of the underlying offenses.[8] Instead, it demonstrates that Mr. Hernandez-Martinez merely knew about the defendant's commission of the crime, which is not enough to suggest that he in any way acted as the defendant's accomplice. See *Rega,* 593 Pa. at 690, 933 A.2d at 1015.

Additionally, the fact that Mr. Hernandez-Martinez admitted to having pending charges is also not enough to show that he was an accomplice in this case. It is true that the witness' charges stem from criminal activity that was committed over two succeeding days after the crimes charged in this case. N.T., 8/15/06, p. 198. However, these charges were mostly drug related and bore no relation to the underlying charges in this case. Furthermore, there is no testimony that would lead a juror to believe that these charges were in any way connected with the

---

8. Mr. Aviles was charged with: aggravated assault—18 Pa.C.S. §2702(a)(1); simple assault—18 Pa.C.S. §2701(a)(1); simple assault—18 Pa.C.S. §2701(a)(2); recklessly endangering another person—18 Pa.C.S. §2705; firearms not to be carried without a license—18 Pa.C.S. §6106(a)(1); possession of an instrument of crime—18 Pa.C.S. §907(a); possession of an instrument of crime—18 Pa.C.S. §907(b); and receiving stolen property—18 Pa.C.S. §3925(a).

See verdict of the jury, filed August 16, 2006. This document omits the charge of person not to possess, use, manufacture, control, sell, or transfer firearms—18 Pa.C.S. §6105(a)(1); because this charge was severed from this trial and the jurors had no knowledge of its existence. As a result, this charge has no bearing on whether the jury could have considered Mr. Hernandez-Martinez to be an accomplice.

present matter. Therefore, the jury could not have believed that Mr. Hernandez-Martinez was an accomplice to the crimes charged in this matter, and a request for the accomplice testimony instruction would have been frivolous. See *Tilley,* 528 Pa. at 149, 595 A.2d at 587.

The defendant may argue that Mr. Hernandez-Martinez' acceptance of the handgun in this case makes him an accomplice after the fact.[9] However, The Supreme Court of Pennsylvania recently held that the accomplice testimony jury instruction was improper in such a situation. See *Commonwealth v. Rega,* 593 Pa. 659, 933 A.2d 997 (2007). In *Rega,* a prosecution witness testified that he had initially lied to the police in order to provide the defendant with an alibi. However, he recanted shortly thereafter and told the truth. On appeal, the defendant argued that the trial court erred when it refused to give the accomplice testimony instruction with regards to this witness. The Supreme Court disagreed and held that "Pennsylvania does not consider an accomplice after the fact to be an accomplice." *Id.* at 689, 933 A.2d at 1014 (citing 18 Pa.C.S. §306(c)). Based upon our Supreme Court's holding in *Rega* as well as the above jurisprudence, Mr. Hernandez-Martinez cannot be considered an accomplice. Therefore, any request for the accomplice testimony instruction would have been frivolous and defense counsel cannot be held ineffective for declining to do so. See *Tilley,* 528 Pa. at 149, 595 A.2d at 587.

---

9. Mr. Hernandez-Martinez was charged with receiving stolen property—18 Pa.C.S. §3925(a), based upon the allegation that he accepted and kept the defendant's handgun after the shooting.

### E. *Trial Counsel's Alleged Ineffectiveness for Failing To Adequately Prepare Petitioner's Self-Defense Claim*

In his tenth averment, the defendant argues that his trial counsel failed to adequately prepare for the presentation of his self-defense case. We begin our analysis by noting that counsel is presumed effective, and it is the defendant's burden to prove that counsel's error "so undermined the truth-determining process that no reliable adjudication of guilt of [sic] innocence could have taken place." *Washington,* 592 Pa. at 711, 927 A.2d at 594.

The defendant has failed to present any evidence supporting his claim. Instead, he proffers a generalized claim of ineffectiveness. Our courts have held that an undeveloped and generalized claim of ineffective assistance of counsel cannot satisfy the prejudice prong of the three-part test enunciated above, and must fail. See *Commonwealth v. Pierce,* 567 Pa. 186, 216, 786 A.2d 203, 221 (2001).

It is also important to note that the record reflects trial counsel's diligent efforts in preparing and presenting this matter. For example, trial counsel was able to elicit statements from Mr. Hernandez-Martinez during cross-examination that significantly bolstered the defendant's written statement which claimed that he acted in self-defense. N.T., 8/15/06, pp. 204-207. Trial counsel also argued strenuously during her closing that the defendant acted in self-defense when he shot the victim in this case. N.T., 8/15/06, pp. 6-19. Lastly, this court granted trial counsel's request that the self-defense instruction be read to the jury. N.T., 8/15/06, pp. 56-59. Based on the above,

it is clear that trial counsel thoroughly prepared and presented the defendant's self-defense claim. Furthermore, the defendant has failed to meet his burden proving otherwise. Therefore, for both of the above stated reasons, his claim must fail.

### F. *Trial Counsel Was Allegedly Ineffective for Failing To Have the Defendant Testify*

In his eleventh allegation of error, the defendant argues that his trial counsel was ineffective for failing to have him testify during his trial. The record in this case contradicts the defendant's allegation. First, the defendant knowingly and voluntarily waived his right to testify during a colloquy held for this specific purpose. N.T., 8/15/06, pp. 3-5. In fact, at the beginning of his colloquy, this court was not satisfied that the defendant fully grasped his rights and allowed him to confer with his trial counsel on this matter. N.T., 8/15/06, p. 4. Then, upon reconvening, the defendant explained that he was aware of his right to testify and knowingly waived this right. N.T., 8/15/06, p. 5. Therefore, the defendant cannot now claim that his trial counsel was ineffective, when there can be no question that it was his decision to not take the stand in his case.

Furthermore, as noted above, the defendant has failed to meet his burden on this claim. The defendant has again proffered a generalized claim of ineffectiveness without presenting any supporting evidence. Therefore, for the above reasons, this claim of ineffectiveness must fail.

## G. *Trial Counsel's Alleged Ineffective Assistance for Misadvising the Defendant To Accept the Plea Offer*

Prior to trial, this court granted defense counsel's motion severing Count five to be held for a separate jury trial.[10] However, after the jury found the defendant guilty on the remaining counts, the defendant elected to enter an open plea of guilty to Count five on September 19, 2006. The defendant now claims that his counsel was ineffective because she misadvised him to enter a plea based on the fact that his sentence on Count five would run concurrent with his other convictions. In effect, the defendant argues that his counsel's advice caused him to enter a plea of guilty.

In order to succeed on such a claim, the defendant must show that "the underlying claim is of arguable merit, that counsel's actions had no reasonable basis designed to effectuate his interests, and that counsel's actions prejudiced [him]." *Commonwealth v. Patterson,* 456 Pa. Super. 202, 205, 690 A.2d 250, 252 (1997).

"Claims of counsel's ineffectiveness in connection with a guilty plea will provide a basis for relief only if the ineffectiveness caused an involuntary or unknowing plea. This is similar to the 'manifest injustice' standard applicable to all post-sentence attempts to withdraw a

---

10. See this court's order dated June 23, 2006. Count five charged the defendant with person not to possess, use, manufacture, control, sell or transfer firearms, 18 Pa.C.S. §6105(a)(1). This court severed this charge because the presentation to the jury of the defendant's prior convictions, which are a natural element of this offense, would have caused him undue prejudice.

guilty plea. The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty: 'All that is required is that [the defendant's] decision to plead guilty be knowingly, voluntarily, and intelligently made.'" *Commonwealth v. Lewis,* 708 A.2d 497, 500-501 (Pa. Super. 1998) (quoting *Commonwealth v. Yager,* 454 Pa. Super. 428, 436-37, 685 A.2d 1000, 1004 (1996) (en banc).

Furthermore, the fact that defense counsel told the defendant that he may receive a more lenient sentence does not make a plea unknowing and involuntary when he has been informed of the maximum possible sentence that could be imposed by the court. See *Patterson,* 456 Pa. Super. at 206, 690 A.2d at 252-53.

The record in this case clearly reflects that the defendant knowingly, voluntarily, and intelligently pled guilty to Count five. On September 19, 2006, prior to his plea colloquy, the defendant reviewed with his counsel a form titled "statement accompanying defendant's request to enter a guilty plea." On question 18 of this form, the defendant acknowledged that this court may sentence him to the maximum amount allowed by law and may make this sentence consecutive with any other sentence imposed by this court.[11] The defendant then signed and

---

11. Question 18 reads as follows:

"(18) I understand the maximum possible sentence for each type of the charges against me, and I understand that is this is an open or charged agreement, the judge may sentence me to the maximum sentence allowed by law, and may impose the sentence for each count to which I am pleading guilty consecutive for a total possible sentence of: 10 years/$25,000 (handwritten by defendant)."

See defendant's statement accompanying defendant's request to enter a guilty plea, p. 2 question 18, filed September 19, 2006.

dated this form and in doing so he acknowledged that all of his answers are true and that he is pleading guilty of his own free will because he committed the offense listed.[12]

The defendant then engaged in a comprehensive plea colloquy in which he reaffirmed the information contained within the above form. First, the defendant acknowledged that he had completed, signed and dated the "statement accompanying defendant's request to enter a guilty plea" which was in the court's possession. N.T., 9/19/06, p. 5. He also stated that he had answered each of the questions contained on that form truthfully. *Id.* The defendant then acknowledged that he was entering an open plea of guilty, "which means that the judge can, in his discretion, sentence you to the maximum permissible sentence." *Id.* He then recognized that this court could sentence him on to a maximum of 10 years in prison and/or a $25,000 fine. N.T., 9/19/06, p. 6. Furthermore, our courts have held that "a plea is not rendered involuntary merely because it is prompted by a belief that it will enable [the] defendant to obtain a more lenient sentence." *Commonwealth v. Dosch,* 348 Pa. Super. 103, 108, 501 A.2d 667, 670 (1985).

Based on the above, there can be no question that the defendant knowingly and voluntarily entered his plea of guilty. While the defendant may have hoped for leniency, it is obvious that he was aware of the maximum amount of time that he could receive on Count five and

---

12. See statement accompanying defendant's request to enter a guilty plea, p. 3.

knew that this sentence could run consecutively to any other sentence imposed by this court. Therefore, the defendant's claim on this issue lacks any merit and fails the first prong of our three-pronged test for ineffective assistance of counsel. *Washington,* 592 Pa. at 712, 927 A.2d at 594.

Lastly, the defendant claims that his counsel is ineffective for explaining to him that if he went to trial on Count five the jury would convict him. The defendant's final claim is without merit, because counsel was entirely correct. The jury had convicted the defendant of firearms not to be carried without a license—18 Pa.C.S. §6106(a)(1). As a result, the jury found that the defendant was in possession of a firearm. Furthermore, the defendant's own statement admitted to being in possession of a weapon as did Mr. Hernandez-Martinez' testimony. The defendant had also previously been adjudicated delinquent on two felony drug charges, which meant that he could no longer legally carry a firearm in Pennsylvania in accordance with 18 Pa.C.S. §6105(a)(1). Guilty plea, 9/19/06, p. 6. These prior adjudications would have been made known to any jury hearing the case. Based on the above, it is hard to imagine how the defendant could prevail on such a charge before a jury. Therefore, this court believes that the defendant was wise to follow counsel's sage advice and cannot show any prejudice as a result.

## CONCLUSION

Based on the above, we respectfully request that the defendant's appeal be denied and our judgment be affirmed.